# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

FUN SPOT OF FLORIDA, INC.,
a Florida corporation, and
JOHN ARIE,

        Plaintiffs,

vs.

MAGICAL MIDWAY OF CENTRAL
FLORIDA, LTD., a Florida Limited
Partnership, MAGICAL MIDWAY, INC.,
a Florida corporation, JOHN B. MORGAN,
ROBIN TURNER, and BARRY FRANK,

        Defendants.

_____/

6:01-CV-633-ORL-28JGG

CASE NO.

**JURY TRIAL DEMANDED**

## COMPLAINT
### (Including Claim for Preliminary Injunctive Relief)

Plaintiffs, FUN SPOT OF FLORIDA, INC., a Florida corporation, and JOHN ARIE,

individually, hereby sue Defendants, MAGICAL MIDWAY OF CENTRAL FLORIDA, LTD.,

a Florida Limited Partnership, MAGICAL MIDWAY, INC., a Florida corporation, JOHN B.

MORGAN, ROBIN TURNER, and BARRY FRANK, and allege

## PARTIES, JURISDICTION AND VENUE

1.    This is a civil action for recovery of monetary damages and injunctive relief

for copyright infringement, misappropriation of trade secrets, conspiracy, breach of

confidential relationship, fraud in the inducement, and trade disparagement in violation of

Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

2.    Plaintiff FUN SPOT OF FLORIDA, INC.(hereinafter "FUN SPOT"), is a Florida

corporation which maintains its principal place of business in Orlando, Florida.

kp\arie2\complaint.wpd

3.     Plaintiff JOHN ARIE is an individual and is a citizen of the State of Florida, residing in Orange County, Florida.

4.     Defendant MAGICAL MIDWAY OF CENTRAL FLORIDA, LTD. (hereinafter "MAGICAL MIDWAY OF CENTRAL FLORIDA") is a Florida limited partnership which, on information and belief, maintains its principal of business in Orlando, Florida.

5.     Defendant MAGICAL MIDWAY, INC. (hereinafter "MAGICAL MIDWAY") is a Florida corporation which, on information and belief, maintains its offices in Orange County, Florida.

6.     Defendant MAGICAL MIDWAY is the general partner of Defendant MAGICAL MIDWAY OF CENTRAL FLORIDA.

7.     Defendant JOHN B. MORGAN is, on information and belief, a lawyer and businessman who resides in the Orlando Division of the Middle District of Florida.

8.     Defendant JOHN B. MORGAN is, on information and belief, president of MAGICAL MIDWAY and one of the principals in MAGICAL MIDWAY OF CENTRAL FLORIDA.

9.     Defendant ROBIN TURNER is, on information and belief, a citizen of the State of Florida residing within the Orlando Division of the Middle District of Florida.

10.     Defendant ROBIN TURNER is also a principal in Defendant MAGICAL MIDWAY OF CENTRAL FLORIDA.

11.     Defendant BARRY FRANK is an individual and a citizen of the State of Florida who, on information and belief, resides within the Orlando Division of the Middle District of Florida.

2

kp\arie2\complaint.wpd

12.     The conduct forming the basis of this Complaint, and the causes of action asserted herein, occurred and accrued with the Middle District of Florida, Orlando Division.

13.     The Court has jurisdiction of the subject matter of Counts I and VIII pursuant to 28 U.S.C. §1338(a).  The Court has ancillary jurisdiction over the substantive state law claims asserted in the remaining counts, which claims arise from the same operative facts as the federal subject matter jurisdiction claims.

14.     Venue lies in this Judicial District and Division under 28 U.S.C. §1391(b) and (c).

## COMMON BACKGROUND ALLEGATIONS

15.     Plaintiff JOHN ARIE is a designer and operator of amusement parks and has been in the business of designing, operating and marketing amusement parks for more than 31 years.   ARIE has acquired a reputation for innovation and success in the amusement park go-kart business.

16.     Defendants have long been aware of ARIE's reputation in the amusement park industry.  In comments to *The Orlando Business Journal*, for example, reported in *The Orlando Business Journal* for the period January 28 through February 3, 2000, Defendants held ARIE out as the International Drive tourist-rich strip's "reigning go-kart king."

17.     Well prior to JOHN ARIE's business dealings with Defendants, ARIE conceived and reduced to practice certain novel improved designs and methods of operating an amusement park utilizing motorized amusement vehicles, such as go-karts, in conjunction with an elevated multi-level racetrack surface.  Certain of the novel designs and methods ARIE conceived are the subject of a pending United States utility patent application entitled "Elevated Wooden Racetrack for Go-Karts and Associated Methods",

3

which application was filed with the United States Patent and Trademark Office on August 26, 1999.  This patent application remains pending in the Patent Office and the subject matter thereof, and the specific claims of the application, are trade secrets of Plaintiffs.

18.    JOHN ARIE subsequently conceived of and reduced to practice various other novel designs and methods of doing business related to the amusement park industry, which designs and methods are the subject of at least one pending United States patent application, and which designs and methods are also trade secrets of Plaintiffs.

19.    Plaintiff JOHN ARIE is president of FUN SPOT OF FLORIDA, INC., the general partner of Fun Spot, Ltd.  Fun Spot, Ltd. owns an amusement in Orange County, Florida, near International Drive and FUN SPOT OF FLORIDA, INC. operates the park. The amusement park is known as the Fun Spot Action Park.

20.    Plaintiffs' Fun Spot Action Park offers a variety of amusement park-related experiences, including elevated multi-level go-kart racetracks.

21.    The Fun Spot Action Park has enjoyed significant commercial success since ARIE designed and implemented certain of his improvements in racetrack design.  The go-kart racetracks located at the park have significantly contributed to the park's financial success.  As a result, Fun Spot Action Park has become widely known among persons involved in the amusement park business, particularly in the Central Florida area.

22.    Since Plaintiffs first opened the Fun Spot Action Park, Plaintiffs have continuously used in commerce the marks **FUN SPOT** and **FUN SPOT ACTION PARK** alone and in combination with various logos in interstate commerce in connection with providing amusement park services.

4

23. By reason of Plaintiffs' continuous and exclusive use of the **FUN SPOT ACTION PARK** and **FUN SPOT** marks in interstate commerce, customers and consumers of amusement park services have come to identify the aforementioned marks with Plaintiffs' amusement park services.

24. The marks **FUN SPOT** and **FUN SPOT ACTION PARK** are inherently distinctive and/or have acquired secondary meaning.

25. Plaintiff FUN SPOT owns and holds the trademark registration for the mark **FUN SPOT ACTION PARK**, and design, which mark is registered on the principal register of the United States Trademark Office under serial number 75420102.

26. Defendant JOHN B. MORGAN is a personal injury attorney practicing law in the State of Florida, who widely promotes his services as "for the people" of the State of Florida. MORGAN also is associated with various amusement park activities including, but not limited to, the amusement/museum known as Wonder Works, located near International Drive in Orange County, Florida.

27. Because of his involvement in amusement park-related services, JOHN B. MORGAN became acquainted with Plaintiff JOHN ARIE. Defendant ROBIN TURNER is a longtime business associate of Defendant JOHN B. MORGAN and was involved in the creation and management of "Wonder Works" with MORGAN.

28. Defendant BARRY FRANK is, on information and belief, in the real estate business and is a longtime business associate of Defendant JOHN B. MORGAN.

kp\arie2\complaint.wpd

29.     After Plaintiffs opened the Fun Spot Action Park, Defendant JOHN B. MORGAN from time to time visited Plaintiffs' park and developed a business friendship with Plaintiff JOHN ARIE.

30.     Thereafter, beginning in about August 1999, Defendant JOHN B. MORGAN, acting individually and on behalf of the remaining Defendants, approached Plaintiffs with a business proposition.  Specifically, Defendant MORGAN proposed that Plaintiffs go into business as a founding partner or owner with Defendants in a new amusement park located on or near International Drive in Orange County, Florida.  Defendant MORGAN further proposed that the new amusement park would offer a variety of amusement services such as go-kart raceway tracks, bumper cars, carnival rides, midway games and other services.  Defendants further proposed that the go-kart tracks be based upon the proprietary designs and creation of Plaintiff JOHN ARIE.

31.     Thereafter, Plaintiffs and Defendants met in person, corresponded, spoke on the telephone, and otherwise communicated relative to the creation of a joint venture or other form of business, such as a limited liability company, wherein Plaintiffs and Defendants would be principals for the purpose of offering amusement park services at a 2.3 acre site selected by Defendant MORGAN on International Drive and to be leased from another MORGAN business associate, namely Nur Ullah Kahn.

32.     Beginning in the summer of 1999 and continuing through the spring of 2000, Plaintiffs devoted substantial time, effort and monetary resources to pursuing a business opportunity with Defendants and in reliance upon representations, promises, and a confidential business relationship that developed among the parties, the details of which are hereinafter enumerated, Plaintiffs disclosed new, unique and novel proprietary designs

kp\arie2\complaint.wpd

for an amusement park utilizing elevated go-kart raceways and other new, unique and novel business plans and methods of operation.

33.     In approximately April of 2000, Plaintiffs notified Defendants that Defendants had reneged on their promises and representations and that Plaintiffs were no longer interested in engaging in business with Defendants.  Plaintiffs further notified Defendants that they should cease all plans to use any proprietary designs, techniques or methods of operation belonging to Plaintiffs and demanded that Defendants return all copies of proprietary design drawings and abandon all efforts to utilize Plaintiffs' design concepts and drawings in connection with their amusement park.

34.     Notwithstanding the aforementioned demands by Plaintiffs, Defendants have continued to use proprietary and confidential information acquired as a result of the confidential relationship that existed between the parties.

35.     All conditions precedent to the filing of this action have occurred or have been waived or excused by law.

## COUNT I
## COPYRIGHT INFRINGEMENT

36.     This Count I is a claim by Plaintiff JOHN ARIE against Defendants MAGICAL MIDWAY OF CENTRAL FLORIDA, LTD., a Florida Limited Partnership, MAGICAL MIDWAY, INC., a Florida corporation, JOHN B. MORGAN, ROBIN TURNER, and BARRY FRANK for copyright infringement.

37.     Plaintiff restates and incorporates by reference into this Count I the allegations of Paragraphs 1 through 35, inclusive.

7

kp\arie2\complaint.wpd

38.     During the course of the business dealings between Plaintiffs and Defendants, Plaintiff ARIE conceived of certain proprietary designs for elevated go-kart raceway tracks, which designs were memorialized in part in certain design drawings. Plaintiff ARIE is the owner of copyright in the aforementioned drawings, which drawings are the subject of United States Copyright Registration No. Vau 459-320 a true and correct copy being attached hereto as Exhibit "A".

39.     Defendants  MAGICAL MIDWAY OF CENTRAL FLORIDA, LTD., a Florida Limited Partnership, MAGICAL MIDWAY, INC., a Florida corporation, JOHN B. MORGAN, ROBIN TURNER, and BARRY FRANK, have infringed and are continuing to infringe Plaintiff's copyright by, among other things:

a.      Making and using unauthorized copies of Plaintiff's copyright drawings;

b.      Making and using unauthorized derivative works based upon Plaintiff's copyrighted works; and

c.      Distributing and disseminating copies of Plaintiff's works or derivative works thereof without the authority or permission of Plaintiff.

40.     As a result of the aforementioned acts of infringement, Defendants have designed and are building an amusement park utilizing the copyrighted designs and drawings of Plaintiff. Defendants are in substance, using Plaintiff's own copyrighted works to engage in competition with Plaintiff, well knowing that such uses are not licensed or authorized, and well intending to profit illegally therefrom.

41.     Defendants' acts of infringement are willful and without any color of license, right or permission.

8

42.     Plaintiff ARIE has suffered and will continue to suffer in the future irreparable injury because of the aforementioned acts of infringement.  Such irreparable injury will continue unless this Court enjoins further acts of infringement by Defendants.

## COUNT II
## CONSPIRACY TO MISAPPROPRIATE TRADE SECRETS

43.     This Count II is an action by Plaintiff JOHN ARIE and Plaintiff FUN SPOT against Defendants MAGICAL MIDWAY OF CENTRAL FLORIDA, LTD., a Florida Limited Partnership, MAGICAL MIDWAY, INC., a Florida corporation, JOHN B. MORGAN, ROBIN TURNER, and BARRY FRANK for conspiracy to misappropriate trade secrets.   Plaintiffs hereby restate and incorporate by reference the allegations of Paragraphs 1 through 35, inclusive.

44.     Beginning in approximately August 1999 and continuing through approximately April 2000, in the Middle District of Florida and elsewhere, Defendants MAGICAL MIDWAY OF CENTRAL FLORIDA, LTD., a Florida Limited Partnership, MAGICAL MIDWAY, INC., a Florida corporation, JOHN B. MORGAN, ROBIN TURNER, and BARRY FRANK knowingly, willfully and unlawfully conspired, confederated and agreed among themselves and with other persons known and unknown to Plaintiffs to misappropriate and cause to be misappropriated trade secrets belonging to Plaintiffs, well intending to profit illegally therefrom.

45.     It was part of the aforementioned conspiracy that Defendants would and did endeavor to create a confidential relationship between Plaintiffs and Defendants, whereby Plaintiffs would repose trust and confidence in Defendants. and whereby, as a result of

kp\arie2\complaint.wpd

such trust and confidence, Plaintiffs would reveal to Defendants their proprietary trade secrets, designs and concepts.

46.     It was further a part of the aforementioned conspiracy that Defendants would and did, after creating such a confidential relationship among the parties, induce Plaintiffs to believe that Plaintiffs were being offered an opportunity to enter into a business venture with Defendants whereby a limited liability company known as Magical Midway, LLC would be formed and whereby one-half of the ownership of such entity would belong to the founding members thereof (hereinafter the "founder's portion"), with Plaintiffs to receive one-third ownership of the aforesaid founder's portion in return for disclosing Plaintiffs' proprietary and confidential design, concepts, ideas and plans, and in further return for Plaintiffs' efforts to design and operate an amusement park utilizing, as one of its primary revenue sources, the Plaintiffs' novel improvements in elevated go-kart tracks and raceways.

47.     It was further a part of the aforementioned conspiracy that Defendants would and did obtain and use proprietary design information and novel concepts, ideas and methods of doing business belonging to Plaintiffs for the purposes of designing their own amusement park to be located near and to compete directly against Plaintiffs.

48.     In order to effectuate the above-mentioned object of the conspiracy, together with other objects of the aforesaid conspiracy, Defendants committed the following overt acts, among others:

          a.     Defendants represented to Plaintiffs that a limited liability company known as Magical Midway, LLC would be formed to operate a theme park on International Drive on property to be leased from Defendants' associate Nur Ullah Kahn.

10

b.    Defendants represented further that the theme park would involve go-kart tracks of Plaintiffs' novel design, bumper cars, bumper boats, various carnival rides, midway games and other amusement services, together with food concessions and a T-shirt shop.  The aforementioned T-shirt shop would be run by Mr. Kahn under the terms of a ground lease agreement, the terms of which were made available to Plaintiffs.

c.    Defendants further represented that one-half of the ownership of the limited liability company would belong to the founding members of the company, with Plaintiffs to receive one-third of the ownership in this founder portion (*i.e.* one-sixth of the total ownership).  Defendants further represented that no capital (apart from Plaintiffs' contribution of their design and creative talents) would be required by Plaintiffs for the receipt of the aforementioned one-sixth ownership.

d.    Defendants further represented to Plaintiffs that the other one-half of the ownership of the limited liability company to be formed would be owned by investors who contributed capital.

e.    Defendants further represented that the managing members of the limited liability company to be formed would be JOHN ARIE, Plaintiff herein, and JOHN B. MORGAN, or his designee, and that these managers would receive a management fee of 5% of gross revenue and the Plaintiffs would manage the go-kart related operations and MORGAN would control cash and daily operations.

f.    Defendants further represented that Plaintiff FUN SPOT and Wonder Works, a business operated by certain of the Defendants, would be entitled to prominently advertise and promote their respective attractions at the Magical Midway amusement park to be operated by the Plaintiffs and Defendants at no cost.

11

g.      During or about August, 1999, Defendants presented Plaintiffs with plans generally showing the layout of the 2.3 acre parcel to be utilized for the limited liability company to be formed by the Plaintiffs and Defendants.   Plaintiffs solicited Plaintiffs' design, drawings, concepts and recommendations for the aforementioned amusement park, particularly with respect to the use of elevated go-kart tracks and raceways on the 2.3 acre parcel.

h.      Thereafter, Defendants repeatedly solicited and obtained from Plaintiffs confidential designs, drawings, and concepts for an amusement park utilizing elevated go-kart raceways.  Among the drawings so obtained by Defendants were the drawings forming the basis of the Copyright Registration No. Vau 459-320, set forth in Exhibit "A" hereto.

i.      Defendants thereafter approached and hired Plaintiffs' engineer, Harry Brumley, P.E., and his firm, HB Associates, Inc., well knowing that Brumley had been integrally involved in implementing design concepts of Plaintiffs previously, had assigned all of his rights in such designs to Plaintiff FUN SPOT, and was in a fiduciary and professional relationship with Plaintiffs.

j.      Defendants caused to be incorporated the company MAGICAL MIDWAY, INC., a Florida corporation, to serve as the general partner of a limited partnership to be known as Magical Midway, Ltd., which entity Defendants represented would be utilized by Plaintiffs and Defendants as the entity formed for their business arrangements.

k.      Thereafter on or about January 20, 2000, Defendants caused to be executed a ground lease agreement between MAGICAL MIDWAY, INC. and Nur Ullah Kahn on the 2.3 acre parcel.

l.      At or about the same time, Defendants caused the aforementioned lease agreement to be assigned to MAGICAL MIDWAY OF CENTRAL FLORIDA, LTD., the limited partnership entity formed by Defendants purportedly for the purpose of doing business with Plaintiffs, but actually for the purpose of achieving the illegal designs and objectives of the conspiracy.

m.      During or about October 1999 through March 2000, Defendants represented to Plaintiffs that they required financial projections on the profit or loss of an amusement park consistent with the representations that have been made by Defendants to Plaintiffs.

n.      From about October 1999 and thereafter from time to time Defendants took the proprietary designs of Plaintiffs, which they had obtained in confidence from Plaintiffs, and disclosed them to architects and engineers for the purposes of drafting and designing drawings suitable for building an entire amusement park.

o.      Among other things, Defendants caused design drawings relative to go-kart raceway tracks that utilized double pit and interlocking track configurations to be prepared, incorporating the novel designs and information obtained from Plaintiffs.

p.      Defendants also caused to be prepared and filed in the Public Records of Orange County, Florida drawings for Defendants' amusement park utilizing concepts and designs obtained from Plaintiffs, well intending to profit therefrom at the expense and in competition with Plaintiffs.  These drawings included drawings submitted to the Orange

13

County Building Department for a building permit, whereby elevated go-kart racetrackways would be constructed so as to be located above certain drainage retention ponds.

q.      Thereafter, Defendants reneged on their promises to include Plaintiffs in the limited liability company to be formed, and specifically repudiated their prior promises and representations that Plaintiffs would obtain a one-sixth ownership interest in the entity to be formed therein in consideration for the proprietary designs, concepts and information supplied by Plaintiffs to Defendants.

r.      Defendants thereafter built go-kart racetracks that incorporated the proprietary and trade secret protected designs of Plaintiffs.

49.      As a direct and proximate result of the aforementioned conspiracy, Plaintiffs reposed trust and confidence in Defendants and Defendants accepted such trust and confidence and encouraged the receipt of same.

50.      As a direct and proximate result of the conspiracy, the parties formed a confidential relationship whereby Defendants occupied a fiduciary relationship to Plaintiffs.

51.      Relying upon the confidential relationship so formed, Plaintiffs disclosed and divulged trade secrets to Defendants, believing that the aforesaid trade secrets would be utilized by Defendants only as part of a common business endeavor of the parties consistent with the representations outlined above. Each of these trade secrets derived independent economic value from not being generally known to and not being readily ascertainable by proper means by persons who could obtain economic value from their disclosure or use. In addition, each such trade secret was and is the subject of efforts that were reasonable under the circumstances to maintain their secrecy.

52.      The trade secrets so disclosed by Plaintiffs to Defendants included:

14

a.     Proprietary designs and know-how for a novel elevated go-kart racetrack;

b.     Novel methods of operating such an elevated racetrack;

c.     Novel methods of business operation and means and method of earning revenue from the operation of such elevated racetrack;

d.     Plaintiffs' internal tax returns, profit and loss statements, and other financial information disclosing, among other things, the profitability of Plaintiffs' business operations at Fun Spot Action Park and, in addition, the profitability of various subcomponents of the Fun Spot Action Park operation;

e.     Proprietary financial projections and methods of maximizing revenue from the operation of an amusement park consistent with Plaintiffs' design concepts; and

f.     Proprietary information concerning the most suitable suppliers of services and parts relating to an amusement park consistent with Plaintiffs' design and related concepts and methods of maximizing the profitability of an amusement park, including, but not limited to, certain aspects of Plaintiffs' patentable and novel technology.

53.     As a direct and proximate result of the aforementioned disclosures, Plaintiff is suffering and has suffered irreparable injury and will continue to suffer irreparable injury in the future if Defendants are not permanently enjoined from using or profiting from Plaintiffs' trade secrets.

54.     It is inevitable that Defendants will use in direct competition with Plaintiffs the novel business methods, concepts and designs set forth above in direct competition with Plaintiffs to the extent such concepts have not already been incorporated in the design of the amusement park currently being constructed.

15

55.    Although certain of the design components of Plaintiffs' technology will ultimately likely be made public through issued United States patents, Defendants have obtained a head start of more than a year as a result of the conduct aforementioned.  In addition, Plaintiffs have no intention of licensing persons to practice the technology of such patents until the patents expire, and Defendants are accordingly obtaining not only a heard start to the use of such technology, but are also attempting to foist upon Plaintiffs an improper compulsory license through their exploitation of the technology in violation of their fiduciary duties to Plaintiffs.

56.    In addition to suffering irreparable injury, Plaintiffs have suffered and will continue to suffer monetary injury and loss, for which Plaintiffs seek an award of compensatory damages.

**COUNT III**
**MISAPPROPRIATION OF TRADE SECRETS**

57.    This Count III is an action by Plaintiffs FUN SPOT and ARIE against Defendants MAGICAL MIDWAY OF CENTRAL FLORIDA, LTD., a Florida Limited Partnership, MAGICAL MIDWAY, INC., a Florida corporation, JOHN B. MORGAN, ROBIN TURNER, and BARRY FRANK for misappropriation of trade secrets in violation of Chapter 688, Florida Statutes.

58.    Plaintiffs hereby restate and incorporate by reference the allegations of Paragraphs 1 through 35 and 43 through 56, above, inclusive.

59.    Defendants have acquired by improper means and have used by improper means, and will continue to use through improper means, the trade secrets of Plaintiff,

16

including, but not limited to those trade secrets specifically outlined in Paragraph 52, above.

60.     Defendants have acquired and used the trade secrets of Plaintiff knowingly, willfully, and unlawfully with intent to illegally obtain economic value therefrom.

61.     Each of the aforementioned trade secrets qualify for protection under Chapter 688, Florida Statutes, in that they derive independent economic value, actual and potential, from not being generally known to and not being readily ascertainable by proper means by persons who can obtain economic value from disclosure or use thereof, and furthermore, such trade secrets were the subjects of efforts that were reasonable under the circumstances to maintain their secrecy.

62.     Plaintiff is suffering irreparable injury and will continue to suffer irreparable injury from the unauthorized use by Defendants of the aforesaid trade secrets unless this Court grants a permanent injunction against such further commercial use.

63.     It is inevitable that Defendants will use and continue to exploit the aforementioned trade secrets in direct competition with Plaintiffs.

64.     Plaintiffs accordingly seek a preliminary and thereafter permanent injunction against the use of the trade secrets or, alternatively, an injunction against use for a reasonable period of time in order to eliminate any commercial advantage Defendants have derived from the misappropriation, together with appropriate other relief.

65.     Plaintiffs have suffered monetary loss a direct result of the conduct of Defendants.

17

## COUNT IV
## BREACH OF CONFIDENCE

66.     This Count IV is an action by Plaintiffs FUN SPOT and JOHN ARIE against Defendants MAGICAL MIDWAY OF CENTRAL FLORIDA, LTD., a Florida Limited Partnership, MAGICAL MIDWAY, INC., a Florida corporation, JOHN B. MORGAN, ROBIN TURNER, and BARRY FRANK for breach of confidence in violation of the Common Law of the State of Florida.

67.     Plaintiffs hereby restate and incorporate by reference the allegations of Paragraphs 1 through 35 and 43 through 65, above.

68.     Plaintiff JOHN ARIE, as an inventor, conceived and reduced to practice certain novel inventions prior to any business dealings with Defendants.

69.     After being approached by Defendants, and after receiving the proposal from Defendants to form a company for purposes of designing, building and operating an amusement park, in the matter aforesaid, Plaintiff JOHN ARIE conceived of further inventions which were patentable, novel, and useful for the purpose of engaging in business with Defendants.

70.     Plaintiff JOHN ARIE intended to use Plaintiff FUN SPOT in connection with the business venture proposed by Defendants.

71.     Plaintiffs reposed trust and confidence in Defendants, and Defendants encouraged and accepted such trust.

72.     Plaintiffs and Defendants were parties to a confidential and fiduciary business relationship pursuant to which Defendants owed Plaintiffs duties of good faith, loyalty, and honesty.

kp\arie2\complaint.wpd

73.     As a result of the confidential relationship between the parties, Plaintiffs disclosed, and Defendants encouraged Plaintiffs to disclose, confidential and proprietary information including Plaintiffs' patentable and novel ideas, including, but not limited to, the items of information set forth in Paragraph 52 above.

74.     Defendants obtained the aforementioned confidential information from Plaintiffs solely as a result of the confidential relationship and with the understanding, both express and implied, that Defendants could and would use such information only in conjunction with a joint business endeavor of Plaintiffs and Defendants pursuant to which the parties would form a limited liability company or limited partnership consistent with the representations outlined above, and pursuant to which such business entity would be licensed by Plaintiffs to use such technology only insofar as the business relationship continued.

75.     Defendants have improperly breached their confidential relationship with Plaintiffs and have improperly used the confidential information they obtained as a result of such confidential information by, among other things:

a.     Repudiating any obligation of confidence to Plaintiffs;

b.     Unilaterally using the confidential information to form their own amusement park and to exploit the confidential information for their sole and unilateral profit and in competition with Plaintiffs; and

c.     By using and disclosing to others, in competition with Plaintiffs, Plaintiffs' confidential information or exploiting such confidential information for their sole profit.

19

kp\arie2\complaint.wpd

76.    Defendants have acted knowingly, willfully, and unlawfully, and with the intent to use and profit improperly from Plaintiffs' confidences.

77.    Plaintiffs have suffered and will continue to suffer irreparable injury by reason of the aforementioned conduct.

78.    Plaintiffs have additionally suffered and will continue to suffer monetary loss as a result of the breach of confidence in which Defendants have engaged.

## COUNT V
## UNJUST ENRICHMENT

79.    This Count V is an action by Plaintiffs against Defendants MAGICAL MIDWAY OF CENTRAL FLORIDA, LTD., a Florida Limited Partnership, MAGICAL MIDWAY, INC., a Florida corporation, JOHN B. MORGAN, ROBIN TURNER, and BARRY FRANK for monetary and injunctive relief to prevent unjust enrichment.

80.    Plaintiffs hereby restate and incorporate by reference the allegations of Paragraphs 1 through 35 and Paragraphs 43 through 78, above, inclusive.

81.    As more particularly alleged in Paragraphs 43 through 78, Plaintiff possessed valuable business information, trade secrets, methods of doing business, novel ideas, and novel designs and know-how related to improved elevated go-kart racetracks and amusement parks.

82.    Defendants had no prior knowledge or experience in go-kart design, operation, methods, drawings, or modes of operation and did not know how to plan or design a go-kart amusement park that would be financially successful.

83.    Defendants induced Plaintiffs into entering into a confidential and fiduciary business relationship.

20                                    kp\arie2\complaint.wpd

84.    Plaintiffs reposed trust and confidence in Defendants and such trust and confidence was accepted and encouraged by Defendants.

85.    Plaintiffs thereafter imparted novel ideas, designs, methods of operation, proprietary designs, proprietary financial information, and other valuable information to Defendants, as more particularly set forth in Paragraph 52, above.

86.    Defendants have abuse the trust and confidence accepted from Plaintiffs by using and endeavoring to use the proprietary information imparted to them unlawfully and for their own benefit in competition with Plaintiffs, well knowing that such competitive use, apart from the license or participation of plaintiffs, is improper and in breach of confidence.

87.    Defendants have been unjustly enriched by the aforementioned abuse of trust and in equity and good conscience should not be allowed to retain or profit from their misconduct.

88.    Plaintiffs have been injured by the breach of trust and are suffering and will suffer in the future irreparable harm from Defendants beach of trust unless this court enjoins Defendants from using, exploiting or profiting from the information they gained in confidence from Plaintiffs.

89.    Plaintiffs have suffered and will hereafter suffer financial loss from Defendants, as more specifically alleged above.

## COUNT VI
## FRAUD IN THE INDUCEMENT

90.    This Count VI is an action by Plaintiffs against Defendants MAGICAL MIDWAY OF CENTRAL FLORIDA, LTD., a Florida Limited Partnership, MAGICAL

kp\arie2\complaint.wpd

MIDWAY, INC., a Florida corporation, JOHN B. MORGAN, ROBIN TURNER, and BARRY FRANK for fraud in the inducement under the Common Law of the State of Florida.

91.     Plaintiffs hereby restate and incorporate by reference under this Count VII the allegations of Paragraphs 1 through 89, above.

92.     Between approximately August 1999 through approximately the spring of 2000, in the Middle District of Florida, Defendants made and caused to be made representations of material fact to Plaintiffs in an effort to induce Plaintiffs to enter into a contract and to part with confidential and proprietary business information.   These representations included, but were not limited to:

         a.     That if Plaintiffs would assist Defendants in designing, marketing, and operating an amusement park utilizing elevated go-kart tracks and raceways, Defendants would cause to be formed a limited liability company or limited partnership called Magical Midway, LLC to own or operate a theme park on International Drive on property leased form Nur Ullah Kahn.

         b.     Defendants further represented to Plaintiffs that if Plaintiffs would assist Defendants in the aforementioned design activity by, among other things, using their superior knowledge in the design of go-kart tracks to develop unique and novel go-kart track raceways and methods of operation, Plaintiffs would benefit in the following ways, among others:

                  i.     Plaintiffs would receive a one-sixth ownership in the limited liability company or limited partnership to be formed;

                  ii.     The "founders" of such limited liability company would receive certain guaranteed returns;

22

iii.     Plaintiffs would be entitled to prominently advertise and promote their Fun Spot attractions at the Magical Midway to be created by the parties at no cost; and

iv.     The other one-half of the ownership in the entity to be created by the parties and to be known as Magical Midway would be financed by investors.

93.     Relying upon the aforementioned representations, together with representations set forth in more detail above, agreed to become involved in the limited liability company and actively assisted Defendants in designing all pertinent details of a theme park utilizing elevated go-kart tracks.  In addition, Plaintiffs disclosed to Defendants proprietary and confidential information, including, but not limited to, the proprietary and confidential information set forth in Paragraph 52 above, including information that was patentable and was of the sole novel creation of Plaintiff JOHN ARIE.

94.     Defendants thereafter repudiated and refused to perform consistent with the representation outlined above.

95.     Each and every representation set forth was material.

96.     Plaintiffs relied upon the above representations to their detriment, and would not have disclosed the information set forth above, or devoted their resources, time and efforts to the design of the theme park, but for Plaintiffs' reasonable belief that Defendants would perform consistent with the representations.

97.     Defendants in fact had no intent of performing the representations made to Plaintiffs, but in fact made such representations intending to deceive and defraud Plaintiffs.

98.     Defendants acted knowingly, willfully, and unlawfully and with intent to defraud.

kp\arie2\complaint.wpd

99.    Plaintiffs have suffered substantial loss as a direct and proximate result of the aforementioned fraudulent inducements and representations of Defendants.

## COUNT VII
## TRADE DISPARAGEMENT IN VIOLATION OF 15 U.S.C. §1125(a)

100.    This Count VII is an action by Plaintiffs against Defendants for trade disparagement in violation Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

101.    Plaintiffs hereby restate and incorporate by reference into this Count VII the allegations of Paragraphs 1 through 35, above.

102.    At all times material to this action, Plaintiffs have operated their amusement park under the service marks **FUN SPOT** and **FUN SPOT ACTION PARK**.

103.    Plaintiffs have heavily advertised and promoted their amusement park services under the aforementioned marks.  The aforementioned marks are inherently distinctive or have acquired secondary meaning.

104.    Defendants are now direct competitors in the identical product market of Plaintiffs.  Specifically, Defendants are now promoting and advertising a competing amusement park located physically near that of Plaintiffs, and which will offer substantially similar services.

105.    Beginning at least in the spring of 2000 and continuing at relevant times thereafter, in the Middle District of Florida and elsewhere, Defendants have made and published false and defamatory statements of alleged fact of and concerning Plaintiffs for the purpose of disparaging the products and services offered by Plaintiffs.  These false and disparaging statements of alleged facts include, but are not limited to the following:

24

a.    That FUN SPOT's go-kart tracks are unsafe and would result in killing someone;

b.    Plaintiff FUN SPOT's tracks are dangerous and one operator has supposedly told Defendants that he has fear that a customer will lose his life on one of the tracks, namely the track with the high bank;

c.    Plaintiff JOHN ARIE would be an investor in Defendants' competing park but for the fact that JOHN ARIE abandoned the project at the last hour and left Defendants no choice but to go forward without him; and

d.    That JOHN ARIE had murdered his first wife by running over her with a car.

106.    Each of the aforementioned statements of alleged fact are false and were known to be false by Defendants at the time they were made or, alternatively, Defendants made such statements with reckless disregard of the truth or falsity of such statements.

107.    Defendants acted in concert in the making, publication and republication of the aforementioned false and disparaging statements, and aided and abetted each other in so doing.

108.    Defendants acted to harm Plaintiffs' business, and specifically with the intention of harming the reputation and standing of Plaintiffs' products and services and for the purpose of tarnishing and injuring the good will associated with Plaintiffs' **FUN SPOT** and **FUN SPOT ACTION PARK** service marks and for the purpose of deluding and tarnishing the value of such marks.

25

109.    Defendants made the aforementioned false and disparaging statements knowingly and intentionally and with the specific intent to inflict harm upon Plaintiffs and to injure and disparage Plaintiffs in their business, all in order to obtain an improper competitive advantage for Defendants.

110.    Plaintiffs are suffering and will continue to suffer irreparable injury from the publication and republication of the aforementioned false and disparaging statements.

111.    In addition, Plaintiffs have suffered and will suffer hereafter substantial monetary loss as a direct and proximate result of the aforementioned false and disparaging statements.

**COUNT VIII**
**SLANDER**

112.    This Count VIII is an action by Plaintiffs against Defendants for slander in violation of the Common Law of the State of Florida.

113.    Plaintiffs hereby restate and incorporate by reference into this Count VIII the allegations of Paragraphs 1 through 35, above.

114.    Beginning at least in the spring of 2000 and continuing at relevant times thereafter, in the Middle District of Florida and elsewhere, Defendants uttered and published, and falsely spoke, false and defamatory statements of alleged fact of and concerning Plaintiffs for the purposes of injuring Plaintiff and for the purpose of disparaging Plaintiff.  These false and disparaging statements of alleged facts include, but are not limited to:

a.    FUN SPOT'S go-kart tracks are unsafe and would result in killing someone;

26

b.    FUN SPOT's tracks are dangerous and one operator has supposedly told Defendants that he has fear that a customer will lose his life on one of the tracks, namely the track with a high bank;

c.    JOHN ARIE would be an investor in Defendants' competing park but for the fact that JOHN ARIE abandoned the project at the last hour and left Defendants no choice but to go forward without him; and

d.    That JOHN ARIE murdered his first wife by running over her with a car.

115.    Each of the aforementioned statements of alleged fact were false and were known to be false by Defendants at the time they were made or, alternatively, Defendants made such statements with reckless disregard of the truth or falsity of such statements.

116.    Defendants acted in concert in the making, publication and republication of the aforementioned false and disparaging statements in aiding and abetting each other in the uttering and publishing of the same.

117.    Defendants acted to harm the business of Plaintiffs and with the intention of harming the reputation and standing of Plaintiffs' products and services.

118.    Defendants uttered the false and disparaging statements knowingly and intentionally and with the specific intent to inflict harm upon Plaintiffs and to injure Plaintiffs in their business, all in order to obtain an improper competitive advantage.

119.    Plaintiff ARIE has suffered mental anguish and injury from the uttering, publication and republication of the aforementioned slanderous statements, and his good name and reputation have been injured.

kp\arie2\complaint.wpd

## **PRAYER FOR RELIEF**

Plaintiffs, FUN SPOT and JOHN ARIE respectively request that the Court enter such Orders and Judgments as are necessary to provide Plaintiffs with the following relief:

a.    A preliminary and thereafter permanent injunction precluding Defendants and each of them, together with their officers, agents, and others acting in privity therewith from using in competition with Plaintiffs or from otherwise improperly using or misappropriating Plaintiffs' trade secrets and confidential information;

b.    A preliminary and thereafter permanent injunction against Defendants and each of them and their agents and others acting in privity therewith from further false, defamatory, or disparaging statements of alleged fact of or concerning Plaintiffs;

c.    An award of compensatory damages;

d.    An award of damages or, in lieu thereof, royalties on the claims arising under Chapter 688, Florida Statutes or, the claims for breach of confidence;

e.    An award of exemplary damages pursuant to Chapter 688, Florida Statutes or, punitive damages on the claims for fraud and breach of confidence;

f.    An award of statutory and other damage available under 15 U.S.C. §1117;

g.    An award of attorneys' fees and costs; and

h.    Such further relief as the Court deems appropriate under the circumstances.

kp\arie2\complaint wpd

## DEMAND FOR JURY TRIAL

Jury trial is demanded on all so claims triable.

DATED this _____ day of May, 2001.

Respectfully submitted,

**Allen, Dyer, Doppelt,**
**Milbrath & Gilchrist, P.A.**
255 South Orange Avenue
Suite 1401
P.O. Box 3791
Orlando, Florida 32802-3791
Telephone (407) 841-2330
Telecopier (407) 841-2343

_____
Herbert L. Allen
Florida Bar No. 114126
Stephen D. Milbrath
Florida Bar No. 239194

29

kp\arie2\complaint.wpd

**EXHIBIT "A"**

# CERTIFICATE OF REGISTRATION





This Certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code, attests that registration has been made for the work identified below.The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

REGISTER OF COPYRIGHTS
United States of America

Dec. 5 2000
Month    Day    Year

OFFICIAL SEAL

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

---

**TITLE OF THIS WORK ▼**

PROPRIETARY GO-KART TRACK LAYOUTS

**NATURE OF THIS WORK ▼** See instructions

DRAWINGS

**PREVIOUS OR ALTERNATIVE TITLES ▼**

**PUBLICATION AS A CONTRIBUTION** If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared.    **Title of Collective Work ▼**

If published in a periodical or serial give: **Volume ▼**    **Number ▼**    **Issue Date ▼**    **On Pages ▼**

---

**NAME OF AUTHOR ▼**

JOHN B. ARIE

**DATES OF BIRTH AND DEATH**
Year Born ▼ Year Died ▼
1949    N/A

Was this contribution to the work a "work made for hire"?
☐ Yes
XX No

**AUTHOR'S NATIONALITY OR DOMICILE** Name of Country
OR { Citizen of ▶ U.S.A.
Domiciled in ▶

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous? ☐ Yes XX No
Pseudonymous? ☐ Yes XX No
If the answer to either of these questions is "Yes," see detailed instructions.

**NOTE**

Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was "made for hire" check "Yes" in the space provided give the employer (or other person for whom the work was prepared) as "Author" of that part and leave the space for dates of birth and death blank.

**NATURE OF AUTHORSHIP** Check appropriate box(es). **See Instructions**
☐ 3-Dimensional sculpture    ☐ Map    ☒ Technical drawing
☐ 2-Dimensional artwork    ☐ Photograph    ☐ Text
☐ Reproduction of work of art    ☐ Jewelry design    ☐ Architectural work
☐ Design on sheetlike material

**NAME OF AUTHOR ▼**

**DATES OF BIRTH AND DEATH**
Year Born ▼ Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE** Name of Country
OR { Citizen of ▶
Domiciled in ▶

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous? ☐ Yes ☐ No
Pseudonymous? ☐ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Check appropriate box(es). **See Instructions**
☐ 3-Dimensional sculpture    ☐ Map    ☐ Technical drawing
☐ 2-Dimensional artwork    ☐ Photograph    ☐ Text
☐ Reproduction of work of art    ☐ Jewelry design    ☐ Architectural work
☐ Design on sheetlike material

---

**YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED** This information must be given in all cases.
1999 ◀ Year

**DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK**
Complete this information ONLY if this work has been published.
Month ▶    Day ▶    Year ▶    ◀ Nation

---

**4**

See instructions before completing this space.

**COPYRIGHT CLAIMANT(S)** Name and address must be given even if the claimant is the same as the author given in space 2. ▼

John B. Arie
Fun Spot Action Park
5551 Del Verde Way, Orlando, Florida 32819

**APPLICATION RECEIVED**
DEC 05 2000
**ONE DEPOSIT RECEIVED**
Dec. 5 2000 1/9/01
**TWO DEPOSITS RECEIVED**
**REMITTANCE NUMBER AND DATE**

**TRANSFER** If the claimant(s) named here in space 4 are different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

DO NOT WRITE HERE
OFFICE USE ONLY

---

**MORE ON BACK ▶** • Complete all applicable spaces (numbers 5-9) on the reverse side of this page.
• See detailed instructions.    • Sign the form at line 8.

DO NOT WRITE HERE
Page 1 of 2 pages

EXAMINED BY ✓

CHECKED BY

☑ CORRESPONDENCE
Yes

FORM VA

FOR COPYRIGHT OFFICE USE ONLY

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?
☐ Yes ☒ No   If your answer is "Yes," why is another registration being sought? (Check appropriate box) ▼

a. ☐ This is the first published edition of a work previously registered in unpublished form.

b. ☐ This is the first application submitted by this author as copyright claimant.

c. ☐ This is a changed version of the work, as shown by space 6 on this application.

If your answer is "Yes," give: Previous Registration Number ▼         Year of Registration ▼

**5**

**DERIVATIVE WORK OR COMPILATION** Complete both space 6a & 6b for a derivative work; complete only 6b for a compilation.
a. Preexisting Material Identify any preexisting work or works that this work is based on or incorporates. ▼

N/A

b. Material Added to This Work Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

N/A

**6**

See instructions before completing this space.

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.
Name ▼                                Account Number ▼

**7**

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent.   Name/Address/Apt/City/State/Zip ▼
Herbert L. Allen
Allen, Dyer, Doppelt, Milbrath & Gilchrist
P.O. Box 3791
Orlando, Florida 32802-3791         407/841-2330
                                Area Code & Telephone Number▶

Be sure to give your daytime phone number

**CERTIFICATION\*** I, the undersigned, hereby certify that I am the
Check only one ▼
☐ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☒ authorized agent of   JOHN B. ARIE
                Name of author or other copyright claimant, or owner of exclusive right(s) ▲

**8**

of the work identified in this application and that the statements made
by me in this application are correct to the best of my knowledge.

Typed or printed name and date ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.
        STEPHEN D. MILBRATH                        date▶ 12/4/00

👉 Handwritten signature (X) ▼

**MAIL CERTIFICATE TO**
Name ▼
Herbert L. Allen
Number/Street/Apartment Number ▼
P.O. Box 3791
City/State/ZIP ▼
Orlando, Florida 32802-3791

**9**

Certificate will be mailed in window envelope

• Complete all necessary spaces
• Sign your application in space 8

1. Application form
2. Nonrefundable $20 filing fee in check or money order payable to Register of Copyrights
3. Deposit material

Register of Copyrights
Library of Congress
Washington, D.C. 20559

\*17 U.S.C. § 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

May 1991—150,000                                ☆U.S. GOVERNMENT PRINTING OFFICE: 1991-282-170/20,018



*LIBRARY OF CONGRESS*

## Copyright Office of the United States

*WASHINGTON, D.C.*

**THIS IS TO CERTIFY** that the attached photocopies are a true representation of the work entitled **PROPRIETARY GO-KART TRACK LAYOUTS** deposited in the Copyright Office with claim of copyright registered under number **VAu 459-320**.

**IN WITNESS WHEREOF**, the seal of this Office is affixed hereto on January 16, 2000.

Marybeth Peters
Register of Copyrights

By: Tracie C. Maupin
Acting Head
Certifications and Documents
Section
Information and Reference
Division

Use of this material is governed by the U.S. copyright law 17 U.S.C. 101 et seq.

"Proprietary Go-Kart Track Layouts"

LIBRARY OF CONGRESS
JAN 0 9 2001
COPYRIGHT OFFICE

FS 00125A



FS 00125B



rec'd by C.O.
4/9/01